Jack MASSENGALE, et al., Appellants,

v.

3M BUSINESS PRODUCTS SALES, INC., et al., Appellees.

No. 84–342.

District of Columbia Court of Appeals.
Argued Oct. 29, 1985.
Decided Dec. 30, 1985.

Jeffrey C. Tuckfelt, for appellants.

Jack Massengale and Josefina Pia filed a brief pro se.

Philip L. O'Neill, Washington, D.C., for appellee 3M Business Products Sales, Inc.

Richard Bussey, Washington, D.C., for appellee Philip Rosenbloom.

Before FERREN, TERRY and ROGERS, Associate Judges.

TERRY, Associate Judge:

Appellants, Jack Massengale and Josefina Pia, ask us to reverse the dismissal with prejudice of their civil action against appellees, 3M Business Products Sales, Inc., and Philip Rosenbloom. The trial court dismissed appellants' complaint because they had failed to comply with discovery orders and failed to pay monetary sanctions previously imposed for discovery violations. We find no abuse of discretion and affirm the trial court's order.

I

On March 8, 1979, appellants filed a complaint in the Superior Court against 3M

Business Products Sales, Inc. (3M), and Philip Rosenbloom. The complaint alleged that appellants had purchased from Mr. Rosenbloom a used 3M copying machine, that 3M and Rosenbloom had been informed that the machine was to be used in appellants' photocopying business, that certain representations had been made and breached by 3M and Rosenbloom, that the machine had continually malfunctioned, and that 3M and Rosenbloom had defrauded appellants by willfully making false statements about the operating condition of the copying machine. Appellants demanded a jury trial.

Thereafter, on April 25, 1980,[1] 3M served appellants with a set of interrogatories, together with a request for the production of documents. Appellants did not respond to the document request, which asked for such items as the financial records of their copying business, federal and state income tax returns, and tape recordings of relevant conversations. Additionally, appellants were a week late in filing their answers to 3M's interrogatories.

Appellants' responses to the interrogatories were evasive and incomplete.[2] Consequently, counsel for 3M sent two letters to appellants' counsel. The first letter, dated June 5, 1980, asked that appellants provide more complete answers and that the documents previously requested be produced by June 20. The second letter, dated June 20, pointed out that appellants had not yet complied with any of 3M's requests. It concluded with a statement that if a "satis-factory response" was not received by July 2, counsel for 3M would "have no choice but to file a motion to compel." Attached to the June 20 letter was a four-page appendix listing all of the deficiencies in appellants' responses to 3M's interrogatories.

Appellants did not respond to either letter. Thus, on July 28, counsel for 3M filed a motion to compel discovery and award expenses. Two days later appellants filed an answer to the motion, stating that 3M had failed to specify which answers were incomplete—despite the appendix attached to the letter of June 20 to appellants' counsel which had stated in detail, item by item, exactly what was inadequate about each answer to the interrogatories.

On September 17 Judge Scott granted 3M's motion. He entered an order directing appellants to complete the answers to interrogatories as "indicated in the Appendix to Exhibit 3 of the Motion."[3] Judge Scott further ordered appellants to respond to the request for documents within ten days, and to reimburse 3M "for the expenses it incurred in obtaining the relief sought by the Motion: $150.00."

On September 30, in response to Judge Scott's order, appellants filed a revised set of answers to the interrogatories, along with an "answer" to the request for documents. Because these attempts at compliance were still unsatisfactory, 3M filed a motion for an adjudication of contempt, which also requested an award of additional expenses.[4] Four days later counsel for

1. The original complaint was dismissed without prejudice under Super.Ct.Civ.R. 12(b)(6) for failure to state a claim upon which relief could be granted. An amended complaint was filed in December 1979.

2. For example, when asked to identify all persons who initially furnished capital to the copying business, appellants replied, "[E]xact amount contributed by each, not certain at this time." In response to a request to state the annual or hourly compensation of each employee, appellants stated, "[C]ost money no particular hourly compensation." Asked to state the total monthly and annual revenues of the business, appellants answered that the records con-

taining such information were "not available at this time." Asked to state the date, time, and place of the allegedly fraudulent inspection of the machine by a 3M service agent, appellants replied, "[R]ecords of the defendants should show these informations [sic]." Finally, in response to a request to identify all persons who provided information in answering the interrogatories, appellants stated, "None."

3. Exhibit 3 was a copy of the June 20 letter.

4. Earlier, on September 24, counsel for 3M sent a letter to appellant Massengale at his home, with a copy to his counsel, reminding Massengale of Judge Scott's order and warning that

Rosenbloom filed a motion to dismiss pursuant to Super.Ct.Civ.R. 37 and 41.

On October 21 appellants filed a reply to the motion for contempt, signed by both appellants (but not by counsel), to which was attached a document entitled "Supplemental Answers to Interrogatories." The supplemental answers, however, added little to what had previously been submitted.

The court did not immediately rule on the pending motions. After about three months had passed, 3M filed on January 16, 1981, a motion to dismiss under Super. Ct.Civ.R. 37(b)(2)(C) and 41(b),[5] which incorporated by reference Mr. Rosenbloom's previously filed motion to dismiss and 3M's motion for contempt.

A hearing was held on January 27. Judge Scott, while not formally disposing of the pending motions, directed certain oral rulings to Mr. Massengale.[6] The judge said:

> I will direct, sir, that you pay that $150 that was directed by the order of September 17th within ten days. I will direct that you pay the $400 as a sanction that I am imposing on behalf of each of the two defendants within 30 days.

> Your failure to pay that $150 within the time period that I have just set, and to pay the $400 to each of the two defendants, may well result in your case being dismissed with prejudice.

should he again fail to comply, 3M would "have no recourse but to seek additional sanctions."

**5.** Super.Ct.Civ.R. 37(b)(2) provides in pertinent part:

> If a party ... fails to obey an order to provide or permit discovery ... the Court may make such orders in regard to the failure as are just, and among others the following:
> * * * * * *
> (C) An order ... dismissing the action or proceeding or any part thereof, or rendering a judgment by default against the disobedient party....

Super.Ct.Civ.R. 41(b) provides in pertinent part:

> For failure of the plaintiff to prosecute or to comply with these Rules or any order of Court, a defendant may move for dismissal of an action or of any claim against him.

**6.** It is unclear from the transcript whether these rulings were also directed at appellant Pia.

> Mr. Massengale, I am not going to fool around with you. You have not in my judgment made the proper effort to comply with the rules. Your answers ... don't reflect conscientious effort to comply with the rules.

At the January 27 hearing, Judge Scott also ordered that the appearance of Massengale's attorney (who was also Pia's attorney) be stricken, "in view of the fact he says he wants to represent himself...."[7] From that date until the date of oral argument in this appeal, Massengale has been representing himself. Appellant Pia apparently continued to be represented by the same attorney.[8]

Appellants did not pay the $150 within the time limit set by Judge Scott. Accordingly, on February 13, 3M and Mr. Rosenbloom filed a joint motion to dismiss under Rules 37(b)(2)(C) and 41(b), citing appellants' failure to comply with any of Judge Scott's discovery orders.

On March 6, after another hearing, Judge Scott issued a written order requiring "Plaintiff Jack Massengale"[9] to comply with all previous orders, and specifying with particularity the documents that still needed to be produced and the answers to interrogatories that still needed to be provided. The order also stated:

> Failing in any or all of the above, this Court, upon motion by either one or both

**7.** For some time before that, Massengale had been filing pleadings and other documents *pro se,* not through counsel.

**8.** On this appeal both appellants filed a joint brief *pro se;* counsel, however, presented oral argument on their behalf.

**9.** The order was directed only to appellant Massengale, although copies were sent to appellant Pia and to all counsel.

At the hearing on March 6, counsel for 3M said to Judge Scott:

> [O]ur request for discovery was directed against both plaintiffs; the order to compel discovery that you signed on September 17th was directed against both plaintiffs. Our motion to dismiss was directed against both plaintiffs ... and we will be seeking dismissal against both plaintiffs.

The judge replied, "All right."

defendants, may order further sanctions *including dismissal with prejudice of this action.* [Emphasis added.]

Once again, however, appellants failed to comply. Thus, on April 30, another joint motion to dismiss was filed by 3M and Rosenbloom.

On September 11 Judge Scott entered another order which denied the motion to dismiss but imposed other sanctions. The first part of this order, which was directed at "Plaintiffs Massengale and Pia," precluded the admission of certain evidence at trial, including evidence of customer complaints and loss of profits suffered by appellants' copying business. In addition, Judge Scott ordered "Plaintiff Massengale" to furnish certain specified documents relating to his ability to comply with the court's previous discovery orders. As far as the record shows, Massengale never complied with this order.

Finally, on November 14, 1983,[10] 3M and Rosenbloom once again jointly moved to dismiss, this time for appellant's failure to pay discovery sanctions, which totaled $950.00. Judge Murphy, to whom the case was now assigned, granted the motion, stating in his order, "It is inconceivable that plaintiff or counsel [has] not paid these costs or any part thereof in over three years."[11]

Appellants now seek reversal of Judge Murphy's order.

## II

Appellants claim that Judge Murphy abused his discretion in dismissing their complaint with prejudice as a sanction for their persistent non-compliance with Judge Scott's discovery orders. On this record we find no abuse of discretion by either Judge Scott or Judge Murphy. Appellants failed to comply with almost every discovery request, court order, and judicial

sanction, causing extreme delay and an exorbitant waste of the court's and opposing counsel's time and energy.

■ In reviewing cases of this kind, we must keep in mind that the dismissal of a complaint as a sanction for non-compliance with discovery orders is an extreme remedy and "should be granted only upon a showing of severe circumstances." *Koppal v. Travelers Indemnity Co.*, 297 A.2d 337, 339 (D.C.1972). On the other hand, "[t]he trial court has broad discretion under Rule 37 to dismiss an action ... for failure to comply with discovery orders," and such a dismissal may be reversed "only if there [is] an abuse of that discretion." *Himmelfarb v. Greenspoon*, 411 A.2d 979, 982 (D.C.1980); *see National Hockey League v. Metropolitan Hockey Club, Inc.*, 427 U.S. 639, 642, 96 S.Ct. 2778, 2780, 49 L.Ed.2d 747 (1976); *Coleman v. Lee Washington Hauling Co.*, 392 A.2d 1067, 1069 (D.C.1978). In addition, we must examine the entire proceedings prior to dismissal in order to determine whether the trial court abused its discretion. *Ungar Motors v. Abdemoulaie*, 463 A.2d 686, 687 (D.C. 1983). From beginning to end, the record in this case establishes a pattern of evasion, intransigence, and foot-dragging by appellants for more than three and a half years.

Appellants' answers to 3M's first set of interrogatories not only were evasive and incomplete but were filed a week after they were due. In addition, appellants utterly failed to comply with the first request for production of documents and ignored two subsequent informal requests for compliance. Thus 3M filed the first motion to compel in July 1980. Judge Scott granted this motion in September and ordered appellants to reimburse 3M $150 "for the expenses it incurred in obtaining the relief

---

**10.** Several other motions not pertinent here, as well as an interlocutory appeal, were filed and disposed of between Judge Scott's order of September 11, 1981, and the motion to dismiss of November 14, 1983.

**11.** Although Judge Murphy referred to "plaintiff" rather than "plaintiffs," the record makes clear that he dismissed the entire complaint of both plaintiffs.

sought...." Appellants not only failed to comply satisfactorily with the discovery order but failed to pay the $150 to 3M. Accordingly, in January 1981, Judge Scott imposed an additional $800 in monetary sanctions, warning appellant Massengale that his case "may well ... [be] dismissed with prejudice" because he had not made a "conscientious effort to comply with the rules."

Despite these explicit warnings, appellants again did nothing in response to Judge Scott's demands. Thus, in March 1981, Judge Scott issued a written order specifying with particularity what was expected of appellants. They ignored this order too, even though it repeated the warning, given orally at the January hearing, that failure to comply might result in a dismissal with prejudice.

The matter came before Judge Scott again in September 1981, almost seventeen months after the first request for discovery. The judge demonstrated extreme patience by again denying appellees' motion to dismiss, despite appellants' obstructive conduct. He did, however, prohibit certain evidence from being admitted at trial, evidence directly related to the frustrated discovery requests. Finally, in February 1984, Judge Murphy ordered dismissal because appellants still had not paid the monetary sanctions ordered by Judge Scott in September 1980 and January 1981.

Judge Scott might well have been justified in dismissing appellants' complaint with prejudice in early 1981. *See, e.g., National Hockey League, supra,* 427 U.S. at 643, 96 S.Ct. at 2781 (no abuse of discretion in dismissal for failure to answer interrogatories over a period of seventeen months despite several admonitions by the court); *Firestone v. Harris,* 414 A.2d 526, 527 (D.C.1980) (default judgment upheld after defendant failed to answer interrogatories properly over a six-month period); *Himmelfarb v. Greenspoon, supra,* 411 A.2d at 982 (dismissal upheld when plaintiff failed to provide proper answers to interrogatories after being given three opportunities to do so); *Coleman v. Lee Washington Hauling Co., supra,* 392 A.2d at 1070–1071 (no abuse of discretion to dismiss for "continued failure to provide answers after repeated requests by appellee and, finally, after a court order directing answers before a specific date"). But we need not decide that question. Rather, we hold that Judge Murphy committed no error in dismissing the case in 1984, given appellants' total lack of compliance with Judge Scott's 1980 and 1981 orders.

The first set of interrogatories and the request for production of documents were served on appellants on April 25, 1980. By September 11, 1981, more than sixteen months later, despite at least three informal requests, four motions to compel or dismiss, and four court orders, appellants had not even attempted to comply with their discovery obligations or to pay the sanctions imposed for their non-compliance. Such flagrant bad faith and callous disregard of legal duty cannot be ignored. *See National Hockey League, supra,* 427 U.S. at 643, 96 S.Ct. at 2781. Judge Murphy was completely justified in dismissing the case because of appellants' failure to pay the monetary sanctions that had been outstanding for over three years; we agree with his comment that their failure was "inconceivable."[12]

---

12. Appellant Massengale also argues that Judge Murphy erred in ordering dismissal without inquiring into his ability to pay the sanctions. Judge Scott, however, did consider Mr. Massengale's assertion that he was not able to pay and ordered him to submit certain documents in support of that assertion. The record does not show that he ever complied with Judge Scott's order. There is some indication in the record that Massengale may have given the court written permission to obtain copies of his tax returns for 1977, 1978, and 1979, which Judge Scott ordered him to do; those returns, however, are irrelevant to Massengale's ability to pay the sanctions in 1981. Moreover, the total amount of the sanctions was only $950, and the protracted nature of this litigation, if nothing else, demonstrates that Mr. Massengale is not indigent.

In any event, if Mr. Massengale had initially complied with the discovery request for his financial records, Judge Scott would have been

Of course, to affirm the dismissal we must also be satisfied that the failure to provide discovery "resulted in some degree of prejudice" to appellees. *Braxton v. Howard University,* 472 A.2d 1363, 1365 (D.C.1984). In this case we conclude that the delay resulting from appellants' flagrant disregard of court orders was so substantial as to be inherently prejudicial. "Although the general rule is that delay alone will not ordinarily generate the requisite degree of prejudice ... an exceptionally long delay may, in an appropriate case, permit a very narrow exception to the rule." *Id* at 1366 n. 4. In *Braxton* we did "not attempt to identify ... the kinds of extreme circumstances which would justify such an exception," *id.,* but we are persuaded that such circumstances exist in this case.

■ Almost four years passed from the time of the initial discovery request to the time of Judge Murphy's order, and during that time appellants never once came up with an acceptable reason for their noncompliance. Appellees were driven to file four separate motions, resulting in a wasteful expenditure of time and energy by the court and counsel. Considering all the circumstances, including the impact of the delay on the efficient operation of the courts, as well as the right of the defendants to be free from vexatious and harassing litigation, we hold that there was sufficient prejudice to justify the extreme sanction of dismissal. *See Von Poppenheim v. Portland Boxing & Wrestling Commission,* 442 F.2d 1047, 1053–1054 (9th Cir.

able to determine at the September 1981 hearing, if not before, whether he was able to pay the $950. Massengale cannot now avoid the sanctions on the ground of inability to pay, when the very documents needed to prove that inability were never produced.

13. Counsel for appellees told us at oral argument that one of their witnesses had died during the pendency of this case. Although this fact in itself might or might not warrant dismissal, depending on all the circumstances, it certainly adds to the prejudice already existing and provides further support for our decision.

1971), *cert. denied,* 404 U.S. 1039, 92 S.Ct. 715, 30 L.Ed.2d 731 (1972).[13]

### III

Appellants maintain that the dismissal of their complaint was erroneous because it was ordered under Rule 41, not Rule 37.[14] It was not a Rule 37 dismissal, according to appellants, because it was only for failure to pay monetary sanctions, not for failure to comply with discovery; thus it must have been a dismissal under Rule 41. Appellants argue that this was improper because Rule 41 authorizes dismissal only for failure to prosecute, not for failure to pay monetary sanctions; the appropriate sanction was the exclusion of evidence, which had already been ordered. We reject this contention because both Rule 37 and Rule 41 authorize dismissal in this case.

■ The monetary sanctions imposed on appellants under Rule 37[15] cannot be separated from their failure to comply with the discovery orders. The sanctions were ordered precisely because of that failure. For this reason we hold that a dismissal based on the non-payment of monetary sanctions imposed for a failure to comply with a discovery order is an order "in regard to the failure" within the meaning of Rule 37(b)(2).

■ Rule 41 also supports dismissal. The first sentence of Rule 41(b) explicitly states that "[f]or failure of the plaintiff ... to comply with these Rules *or any order of Court,* a defendant may move for dismissal of an action or of any claim against him." [Emphasis added.] Appellants failed to

14. See note 5, *supra.*

15. Super.Ct.Civ.R. 37 provides in part:
    In lieu of any of the foregoing [sanctions] or in addition thereto, the Court shall require the party failing to obey the order or the attorney advising him or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the Court finds that the failure was substantially justified or that other circumstances make an award of expenses unjust.

comply with four separate orders of the court: on September 17, 1980, and on January 27, March 6, and September 11, 1981. Dismissal under Rule 41 was fully justified.

## IV

 Finally, appellants contend that Judge Murphy's order dismissing the complaint, as well as Judge Scott's previous orders imposing sanctions and compelling discovery, applied only to Mr. Massengale, not to appellant Pia. The record does not support their contention. All of appellees' motions were directed at the "plaintiffs," not just plaintiff Massengale, which of course was proper because Massengale and Pia had filed a joint complaint based on claims relating to their partnership. Counsel for 3M also made clear at the hearing on March 6, 1981, that all discovery requests and orders to compel discovery were directed at both plaintiffs; see note 9, *supra.* Judge Scott's order of September 11, 1981, was specifically directed at "Plaintiffs Massengale and Pia," and that was the last order, pertinent to this appeal, issued prior to Judge Murphy's dismissal of the complaint. We therefore hold that the sanction of dismissal was properly directed at Pia as well as Massengale.

*Affirmed.*